UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) | Criminal No. 05-0066 (PLF) |
| WALTER ANDERSON, | ) ) ) | |
| Defendant. | ) ) | |

MEMORANDUM OPINION AND ORDER

On August 1, 2005, Chadbourne & Parke LLP moved to withdraw as counsel for defendant Walter Anderson on the grounds of Anderson's asserted inability to pay his substantial legal bills. On August 12, Anderson filed a motion for the appointment of counsel under the Criminal Justice Act, 18 U.S.C. § 3006A ("CJA"). The motion was accompanied by a financial affidavit, sworn to by Mr. Anderson, affirming that Anderson's current liabilities substantially outweigh his assets and that he has no current source of regular income. Anderson also filed a motion for leave to proceed *in forma pauperis* with his appeal from this Court's August 12, 2005 denial of his second motion to reconsider its earlier denial of his bond motion.[1] The government has opposed both the motion to withdraw and the motion for appointment of counsel, claiming that Mr. Anderson's representations regarding his financial situation were either false or incomplete. Defendant subsequently filed a reply in support of his motion for the appointment of counsel.

---

[1] On October 12, 2005, Chadbourne & Parke notified the Court that Anderson had withdrawn his appeal to the D.C. Circuit and declared his intention to file another motion for reconsideration in this Court. The Court accordingly will deny as moot defendant's motion for leave to appeal *in forma pauperis*.

Chadbourne & Parke's sudden desire to withdraw from the case raised relevant and substantial questions about the course of its relationship with its client, especially with regard to arrangements for compensation.  Therefore, on September 7, 2005, the Court directed Chadbourne & Parke to deliver to the Court for *ex parte*, *in camera* examination documents related to Chadbourne's representation of Mr. Anderson, including the retainer agreement signed by Anderson and Chadbourne, all correspondence with any individual or entity regarding the payment of fees for Chadbourne's representation of Mr. Anderson, and copies of all invoices and billing statements issued and checks or wire transfers reflecting monies paid to Chadbourne for its representation of Mr. Anderson.  Those documents were delivered to Chambers along with an affidavit sworn to by Hwan Kim, Esq., a partner at Chadbourne & Parke LLP and a long-time attorney for Mr. Anderson in non-criminal matters.  On September 14, 2005, the Court directed Chadbourne & Parke to produce additional documents, including copies of any indemnification agreements to which Mr. Anderson was a party.  Also at the Court's request, the government provided for the Court's *ex parte* review a list of questions about Mr. Anderson's business and financial dealings that the government maintained would assist the Court in determining Mr. Anderson's eligibility for appointed counsel.

On September 15, 2005, after hearing from both the prosecution and the defense in a public proceeding, the Court conducted a sealed *ex parte* hearing in which Mr. Anderson as well as Abbe Lowell, Esq. and Hwan Kim, Esq., two of Anderson's attorneys and both partners at Chadbourne & Parke, testified under oath about certain aspects of Anderson's financial situation as well as the history of his client relationship with Chadbourne and Mr. Kim.  The Court questioned the witnesses to clarify certain issues raised by the documents provided for *in*

*camera* examination. The Court propounded some of the questions suggested by the government, although many of the others were of little direct relevance to Anderson's eligibility for appointed counsel. Upon consideration of the aforementioned evidence and testimony and of the entire record in this case, the Court finds that Mr. Anderson appears at this juncture to be eligible for the appointment of counsel to represent him in the trial of this matter.[2]

The Criminal Justice Act provides for the appointment of counsel "for any person financially unable to obtain adequate representation" when the court determines that the interests of justice so require. 18 U.S.C. § 3006A(a). The test of a defendant's eligibility it not "indigence," but whether the defendant's "net financial resources and income are insufficient to enable him to obtain qualified counsel." 7 Administrative Office of the United States Courts, GUIDE TO JUDICIARY POLICIES AND PROCEDURES, APPOINTMENT OF COUNSEL IN CRIMINAL CASES ("GUIDE TO JUDICIARY POLICIES AND PROCEDURES") § 2.04 (2005); see also United States v. Harris, 707 F.2d 653, 660 (2d Cir.), *cert. denied*, 464 U.S. 997 (1983) (test is defendant's financial inability to obtain the services of retained counsel). When the Court determines that a case is "extremely difficult," it may appoint up to two attorneys to represent a single defendant. 7 GUIDE TO JUDICIARY POLICIES AND PROCEDURES § 2.11(B) (court may appoint "an additional attorney"); PLAN OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA PURSUANT TO THE CRIMINAL JUSTICE ACT OF 1964, AS AMENDED § I.C (2002).

---

[2] The delay in issuing this Opinion has resulted from the time it has taken the Court, with the assistance of Federal Public Defender A.J. Kramer, to attempt to identify a law firm willing to assign one of its lawyers to undertake the substantial commitment that will be required, working with the Federal Public Defender, to represent Mr. Anderson in this case. This endeavor has been complicated by the lengthy list of lawyers and firms the government has represented may have an actual or apparent conflict of interest.

A defendant seeking the appointment of counsel bears the burden of establishing financial inability. See United States v. Harris, 707 F.2d at 660; United States v. Salemme, 985 F. Supp. 197, 201 (D. Mass. 1997). It is the responsibility of the defendant to provide the court "with sufficient and accurate information upon which the court can make an eligibility determination." 7 GUIDE TO JUDICIARY POLICIES AND PROCEDURES § 2.03(C). Although the defendant bears the ultimate burden of demonstrating financial eligibility under the CJA, "[a]ny doubts as to the person's eligibility should be resolved in his favor; erroneous determinations of eligibility may be corrected at a later time." 7 GUIDE TO JUDICIARY POLICIES AND PROCEDURES § 2.04. If after counsel is appointed the court finds that the defendant is financially able to retain counsel, the court may terminate the appointment of counsel as the interests of justice dictate, and also may direct the defendant to reimburse the defender organization, law firm or other agency which provided the appointed attorney for the cost of representation. See 18 U.S.C. § 3006A(c), (f); United States v. Salemme, 985 F. Supp. at 201.

The government argues that Mr. Anderson's submissions in support of his motion for the appointment of counsel leave open significant questions as to whether he in fact has the ability to pay for retained counsel by means of financial resources located abroad. Such unanswered questions may exist, but it is simply beyond the resources of the Court and the proper scope of inquiry at this point in the proceedings to unravel the twisted skeins of Mr. Anderson's corporate and financial dealings to rule out the possibility of such hidden assets. In any event, the evidence in the record, the sworn testimony heard by the Court, and the simple facts of Mr. Anderson's situation strongly suggest that he is indeed without access to substantial funds at present.

The sworn testimony of Anderson, Kim and Lowell, as well as the representations made by Mr. Anderson's attorneys in open court, show that Anderson has incurred well over one million dollars in legal fees with Chadbourne & Parke and that Chadbourne has been paid for its services only the $100,000 provided by Mr. Anderson's friends and family as a retainer at the outset of the representation.  Despite Chadbourne & Parke's entry of a general appearance as Mr. Anderson's counsel in this case, it also is clear that the scope of Chadbourne's initial undertaking under its only written retainer agreement with Anderson was limited to the representation of Mr. Anderson "in connection with bail/bond status hearing and related corporate/business matters."

It appears from the sworn testimony of Mr. Kim concerning his prior representation of Mr. Anderson in other matters and from Mr. Anderson's own sworn statements that Anderson would much prefer to be represented by Chadbourne & Parke rather than by court-appointed counsel.  It also is clear that Mr. Anderson fervently desires to obtain pretrial release under some Court-approved set of conditions such as (assuming the Court were to approve it) the Nardello Schwartz plan.  It is difficult to imagine that Mr. Anderson, if he truly had the wherewithal to afford counsel and the cost of his proposed release plan, would willingly forego these objectives simply to conceal assets from the Court.

The representations by Chadbourne & Parke attorneys in open court and their sworn testimony in the *ex parte* proceeding further establish that until recently Mr. Anderson, as well as Mr. Kim and Mr. Lowell, fully expected funds sufficient for these purposes to be forthcoming.  According to testimony, the expected source of these funds (at least at some point in the history of this case) was the proposed liquidation of substantial assets held by a corporate entity with which Anderson had an indemnification agreement.  That liquidation, however,

5

purportedly was blocked by legal actions taken by a creditor or creditors.[3] Although it does not foreclose completely the possibility that there are assets accessible to Mr. Anderson abroad or that funds may become available in the future, this account provides a satisfactory explanation for why Chadbourne & Parke agreed to represent Mr. Anderson without additional payment for as long as it did, as well as for why it proposed the costly Nardello Schwartz plan for pretrial release. On these facts, the Court finds that the defendant has demonstrated adequately his financial inability to retain and pay counsel at this time. If, however, assets become available to pay counsel during or at the conclusion of the criminal case, defendant and his counsel are obligated to advise the Court so the Court may consider ordering reimbursement.

These findings do not, however, justify Chadbourne & Parke's complete discharge from the case. The firm has acknowledged that it has a continuing duty to invest whatever time is necessary to provide a smooth transition to new counsel, including a review with new counsel of documents, potential theories of defense, and explanations of the corporate structure and background relevant to the case. The Court also will impose on Chadbourne & Parke a continuing duty to represent Mr. Anderson in bond proceedings. This obligation arises not only from the considerable time and effort Chadbourne already has devoted to the litigation of this issue, but also from the express terms of its retainer agreement with Mr. Anderson, its lawyers' ethical obligations to their client, and their duties as officers of the Court.[4]

---

[3]   Witnesses also testified that Chadbourne & Parke has been unsuccessful in obtaining reimbursement from any other entity with which Mr. Anderson has an indemnification agreement.

[4]   On October 5, 2005, Mr. Anderson sent a letter to Chambers requesting the prompt resolution of his motion for appointment of counsel, and stating that he "effectively [has] had no legal counsel since June of this year when Chadbourne Parke stopped working on [his]

The Court concludes that the defendant has demonstrated his financial inability to retain adequate counsel and that it would be in the interests of justice to appoint counsel for him under the provisions of the Criminal Justice Act. The Court also finds that the case is extremely difficult and warrants the appointment of two lawyers. Chadbourne & Parke may withdraw from its representation of Mr. Anderson with respect to trial and pretrial matters, but it will not be discharged from its obligation to represent him on all issues related to his requests for pretrial release, both in this Court and in the D.C. Circuit. Accordingly, it is hereby

ORDERED that [55] Chadbourne & Parke's motion for leave to withdraw as counsel for defendant is GRANTED in part and DENIED in part. Chadbourne & Parke shall continue to represent Mr. Anderson in all further proceedings regarding his requests for pretrial release; it is

FURTHER ORDERED that [59] defendant's motion for appointment of counsel is GRANTED; it is

FURTHER ORDERED that under the Criminal Justice Act, 18 U.S.C. § 3006A, the Court appoints the Federal Public Defender for the District of Columbia, and a second attorney yet to be designated, to represent Mr. Anderson in all matters other than his past and any

---

case due to [his] inability to pay them." Mr. Anderson also requested that the Court "consider our new evidence for pretrial release when it is presented."

The Court wishes to emphasize that the Federal Public Defender and the counsel to be appointed for Mr. Anderson under the Criminal Justice Act are appointed for the purpose of representing Mr. Anderson at trial and in related pre-trial matters, and not for the continued litigation regarding pretrial release. That obligation remains with Chadbourne & Parke, whose lawyers have a continuing duty to represent Mr. Anderson zealously on the matter of his pretrial release, both here and in the D.C. Circuit.

future motions for pretrial release and any appeals therefrom.[5]  Assuming that the second attorney appointed is in the private practice of law, he or she will be compensated at the rate of $90 an hour as authorized by the Criminal Justice Act.  See 18 U.S.C. § 3006A(d); 7 GUIDE TO JUDICIARY POLICIES AND PROCEDURES § 2.11(B).  Any additional lawyers from the second attorney's firm who work on the case from time-to-time will donate their time *pro bono*.  The attorney designated by the Federal Public Defender is directed to enter her formal appearance in the case promptly; it is

      FURTHER ORDERED that if the defendant is found at any time to have the financial ability to retain, or to have been able to retain counsel in this matter, he shall reimburse the Office of the Federal Public Defender for the District of Columbia and the law firm providing private counsel for the time expended in this case at a reasonable hourly rate (not limited to $90 per hour), as well as for costs and expenses incurred in his representation; it is

      FURTHER ORDERED that [61] defendant's motion for leave to proceed on appeal *in forma pauperis* is DENIED as moot; and it is

---

[5]    Federal Public Defender A.J. Kramer has represented that Michelle M. Peterson of that Office is to be assigned to the case.

FURTHER ORDERED that, as previously announced, a status conference and arraignment on the superseding indictment in this case shall be held on October 28, 2005, at 10:30 a.m.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: October 26, 2005